Thank you. May it please the court, counsel. My name is Dan Johnson. I'm here representing Jordan Stevens, who is currently serving a sentence of life for his convictions in this matter, which included first-degree murder. There's three main areas I'm going to deal with in oral argument. Obviously rely on the brief for the other areas, but I think the three areas I'm going to suggest are reversible error in this matter, either individually or cumulatively. And the first main issue, of course, as you no doubt saw, is the unfortunate testimony of agent, FBI agent Barefoot, who was the main case agent in this matter. And just to emphasize it, just going to it, it's at ER 32 and 33. And the question by Defense Counsel was, all right, so as early as June 3rd, you've already made that transition in your documentation. That was referring to the documentation regarding the suspects in the matter. The answer, instead of just answering that question, the agent says, again, I wouldn't call it a transition. The evidence was clear in this case that regardless of whether or not Ms. McCormick was involved and in what capacity, Jordan Stevens was the one that killed Ms. Minthorn. Clearly a violation of black letter law on comments by a witness about credibility and guilt in this matter. My understanding, Counsel, is this occurred at the end of the day? I think it was near the end of the day. And you objected, of course, Counsel, trial counsel? Counsel tried to object. Co-counsel was not the one that was examining the witness. It was Attorney Klein who said, moved to strike the testimony contemporaneously. That evening, the defense team put together a motion asking the court to strike the testimony, correct? They did a motion for a mistrial and or to get a curative instruction. And the next morning, the district judge came out, granted the motion excluding the testimony, and told the jury that they and they alone were determining guilt, not any particular witnesses. Am I correct about that? You are correct about that. But the reason I don't think it's enough in that, in this particular case, the judge... Don't we assume that jurors follow instructions? We do. We do. But when we're looking at a prejudicial issue like this, you have to look at all the evidence in the case. In this case, we have two women that were allegedly involved in this incident. There really isn't a lot of direct evidence to show, other than their testimony, that the defendant was even at the scene of the murder in this case. There's no firearm. There's no evidence tying him to the scene. And so it basically comes down to the credibility of these two women. And again, Tane Washer, we alleged in our brief, and allege now, that the defense was hobbled in their attempt to attack her credibility and her bias and her motive. The judge wouldn't let in evidence about whether she blamed Ms. Minthorn, the victim, for the death of her brother. The judge would not allow the defense to get into the fact that she had pending potential charges for the death of her child due to ingesting her drugs. And that was not allowed to be explored. How are those two things relevant to the guilt or innocence of your client? Well, they go to the motive of the person to testify, to do what the government wants. And in this case, there's a lot of evidence in the record of Agent Barefoot spoon-feeding evidence to Ms. McCormick on what he wants her to say, tying that in with this testimony. What evidence are you referring to there? Well, if you look at the cross-examination of Agent Barefoot, the defense went into a number of statements that Agent Barefoot made to Ms. McCormick in the process of this, of several hundred or hundreds of times that he talked to her. There's some evidence, and the defense was arguing that it was kind of an improper relationship there. But in the end, the court then, later on after that process, allowed the government to respond to that by, instead of limiting it to the evidence of what was told to Ms. McCormick, the officer, Barefoot again, was allowed to disparage the defendant by introducing evidence of other violent crimes based on hearsay that some other person claimed he had shot someone. And that really was not appropriate evidence in response to the appropriate cross-examination of Agent Barefoot about the offers he was making to Ms. McCormick and things like that. But it is in the section of cross-examination, there's a lot of statements that support that defense, that there was a lot of efforts by Agent Barefoot to get Ms. McCormick to cooperate by promising her or leading her to believe she's going to get benefits from cooperating in this case. It looks to me like when you get into these issues and what the judge's rulings were, there was a comment on the evidence we allege by the judge that kind of, I'm going to just rely on the brief for that. But we're looking at... This is, that comment I think you're referring to, was in the context of the district judge ruling for the defense, correct? I don't take it that way, Your Honor. I took it as a comment. There was an objection from the prosecutor and the trial judge said, I'm overruling the cross-examination to go forward, right? Well, I'm not sure we're on the same page on which subject that was. Well, help me. I recall the judge's comment was, move along, we've been through this. And I don't have the exact quote there, but again, I... Isn't that something the judges say all the time though? It's hard to see how that's particularly prejudicial. You hear that comment all the time during examinations. Well, I'm not relying on that issue for trying to get you to grant a new trial. I think we dealt with it in the brief. If you have any further argument, I'm happy to address it. But I think the most egregious violations are the officer opinion of guilt. And I understand... Is that surprising? I mean, this is the case agent, right? Yes. And so, and your client is being prosecuted, would it surprise anybody to think that the case agent responsible for pursuing the case thinks the person on trial is guilty? I mean, that seems like a pretty obvious proposition. And since it's a plain air standard, you need to demonstrate some prejudice. What exactly is the prejudice of learning that the case agent thinks that the defendant is guilty? In fact, indeed, the theory seemed to be that the defense, or one of the theories of the defense seemed to be that he focused on the defendant early on, which seems consistent with his statement that he thought the defendant was guilty. So where's the prejudice from that comment? The prejudice is the case agent and his opinion that the defendant is the one that did it. So what's surprising? I mean, everybody has to assume that, don't you? I'm just thinking of a juror sitting there, wow, the case agent thinks the defendant being prosecuted is guilty.  Well, I understand they're not supposed to, but it's plain air standard here. So it makes me wonder, this is kind of out of the blue, I understand, but what exactly was the prejudice? Well, the prejudice is the investigating FBI agent tells the jury he did it.  But doesn't the jury know that already? Because if the agent didn't think he was guilty, he probably wouldn't be the subject of the prosecution. They're not supposed to know that. They're not supposed to be told that by the agent. They didn't have to be told that. If you've ever been a juror, I keep hoping, but I never actually get picked. Yeah, they never let me. I've been there three times and they kick me out. But wouldn't you figure out that the case agent must think the defendant is guilty if we're here having this prosecution? Well, don't we all think that because there's a case where someone's being prosecuted that they're guilty? Well, I've seen... I mean, that's not the point, is it? The point is a fair trial and following the rules of evidence and the Constitution. I'm still not hearing a lot of prejudice identified here. Well, I understand that point, but again, there's not a ton of other evidence other than some, you know, ambiguous statements the defendant allegedly made and not a lot of evidence tying him to the scene other than these two women who we don't believe were... the court allowed their bias and prejudice to be explored appropriately. And that's... those are the main areas. One of the truncations that the district court made involved testimony about one of the witnesses' brother's death. Is that correct? Do I have that right? You do. And that's on page four of our brief. And it's basically... Explain to us what the circumstance of a witness' understanding of her own brother's death have to do with the homicide in this case. Because there was some evidence that she blamed the victim for her brother's death. And that's in the offer of proof, which is on... in the brief. That's on page four, five, and six. And that offer of proof was to both that as well as the baby being killed by the mother's drugs being, you know, not given to the baby. Probably might have been a manslaughter kind of scenario. But again, weren't allowed to explore it. It was cut off. So that's what I'm saying. I mean, if you think about it, you know, in every criminal trial, I mean, we can always say, oh, you know, they wouldn't be there unless, you know, the government has something. But that's not the point. I don't think any judge on this panel is saying that. All right. I think all my colleague from Hawaii is saying is shocking news. The cop thinks that the defendant is guilty. Well, how about we follow... That's not... Well, what was wrong with what the district court did after thinking about it overnight? That is striking the testimony and directly telling the jurors, you decide who's guilty, not any witness. What was wrong with that? I don't think there's anything wrong with it. Did you object to that instruction? I think the defense proposed slightly different language. But the ultimate instruction given by the judge, I don't think was appropriately objected to. So I think that was... And for some reason, which I don't understand why the defense withdrew their motion for mistrial. There's no good reason to do that. I didn't ask you about that. I mean, they withdrew that. Yeah. I don't know why they did it. I think it's ineffective assistance of counsel, frankly. Can I ask you that before you maybe save some time for rebuttal? You have raised an ineffective assistance argument. Sometimes we don't deal with those on direct appeal on the theory that the record is not sufficiently developed. I think it is on the issue of the comment by the agent. Because in this case, the judge has his own judgment. I look at it as a personal rule that only one lawyer can cross-examine or object. You have a constitutional violation taking place. The judge says proceed. He doesn't rule on the motion to strike at that time. The jury is allowed to have this evidence in their mind festering overnight until the corrective instruction is made. And when we look at the prejudice, I think you need to compare it to the overall case involved in this. And when you add in the attacks that the defense was precluded from making on the two women in this matter, that adds up to a cumulative error and an unfair trial. And I'd like to reserve the last two minutes if I might. Thank you. Thank you. Good morning. Brie Blackhorse on behalf of the United States. And may it please the court. This court should affirm the judgment of the district court in full because no reversible error occurred with respect to any of the issues Mr. Stevens has raised on appeal. So I'd first like to address Mr. Stevens' arguments regarding the stricken opinion testimony. So although that opinion testimony was error that was plain, the slight delay by the district court in addressing that opinion testimony did not affect the defendant's substantial rights. And that's because when the district court struck that testimony and issued a curative instruction, the district court effectively dispelled any prejudice that may have resulted as a result of that improper opinion testimony. And as the court noted, when we're looking at this issue, the court strongly presumes that the jury followed that curative instruction. That is, there's a strong presumption the jury did not consider that improper opinion testimony at all in its deliberations as to whether Mr. Stevens was guilty or not guilty. And in this case, there is no evidence in the record to rebut that presumption. The district court's curative instruction also was effective in dispelling any potential prejudice, which was minimal at best. It was strong. It was forceful. It specifically identified and indeed quoted the improper opinion testimony from Agent Barefoot, and it instructed the jury not to consider it in any way in its deliberations. It also reminded the jury that it was their duty alone to make the decision as to whether or not Mr. Stevens was the one that shot the victim, and that they alone would decide guilt or innocence in this case. And the prejudicial effect of that opinion testimony was minimal at best. As the court already noted, the fact that the case agent thought the defendant was guilty is not a shock. Indeed, that was one of the themes of defense counsel at trial. And when looking at the prejudicial effect of that improper opinion testimony... Yes. And so it appears that defense counsel had two themes at trial. One, that the case agent zeroed in on Mr. Stevens right away, and also that it was possible Ms. McCormick, who was one of the eyewitnesses who testified at trial that Mr. Stevens shot the victim, she was the one who pulled the trigger. And they were both... The defense counsel was able to adequately present that evidence and all issues they believed would create reasonable doubt to the jury in this case. And the district court also didn't plainly err in failing to sua sponte, declare a mistrial in this case. The district court is in the best position to determine whether an incident merits a mistrial, and it has wide discretion to issue a curative instruction and strike improper testimony in lieu of declaring a mistrial. So in this case, it's clear that any limited prejudice from the improper opinion testimony from Agent Barefoot was adequately remedied by that curative instruction, which again was clear, forceful, and adequate to remedy any prejudice in this case. Was there any physical evidence connecting Mr. Stevens to the murder? There was a testimony of McCormick and Tamewasher. What was the additional evidence that was put on to demonstrate that he was the killer? A third eyewitness testified at trial that was Mr. Castillo. He was the owner of a tavern that those three visited after the shooting, and he testified at trial that he witnessed Mr. Stevens with a rifle at the time, and that when he offered to purchase that rifle from Mr. Stevens, Mr. Stevens refused to part with it. Let's talk about Tamewasher's testimony. The defense wanted to delve pretty deeply into her feelings about Minthorn's guilt and whether she blamed Minthorn for her brother's death. Why not allow extensive cross-examination on that point? Because it was irrelevant. So there are three points I'd like to address with regard to this. Well, you've got a witness who has some apparent, this is not made out of whole cloth, has some apparent bias against the defendant in this case related to her own brother's death. Why not full cross-examination on that point? Because Ms. Tamewasher testified at trial that she did not blame the victim for her brother's death, and that can be found at 3 ER 262. But when the defense wanted to go further, the district court said no. And because it was irrelevant at that point, because she testified she did not blame the victim for her brother's death at all. Why does that have to be believed? I mean, witnesses say all sorts of things, and cross-examination probes that. She may say, no, I wasn't influenced by that, but why shouldn't defense be allowed to find out if that's really true? That maybe she had some residual feelings or feelings she didn't want to reveal, and so she didn't reveal in her first answer. Because at that point, the district court properly exercised its discretion to limit that irrelevant testimony. But it's irrelevant only if you accept the proposition that you just told us. That is, she said she didn't blame him. But suppose she really did, and by calling it irrelevant, then the defense doesn't get a chance to probe that. But it's irrelevant because Ms. Tamewasher's alleged animus towards the deceased victim in this case has no bearing on her testimony either implicating or exonerating Mr. Stevens or, separately, Ms. McCormick. So at that point in the trial, when Tamewasher is on the stand, she's a critical witness for the prosecution, and she's asked about whether she blames Minthorn for her own brother's death, and she says, I do not. At that point, didn't the defense ask to voir dire the witness? I do not recall. Let's assume they did, and I don't know if this is in the record or not, but if I'm the defense counsel in that state, and I ask to voir dire, the reason I'm asked to voir dire is because I think I've got a statement that contradicts what she just said. Is that the case? Again, she testified that she did not blame the victim for her brother's death, which was a totally separate incident. What does the record tell us about what the defense wanted to do to test the reliability, the credibility of her statement that she did not blame him for her own brother's death? Well, the defense had adequate opportunity to show the jury as to why... That's not my question, counsel. Well, my question is, what is there in the record? What does the trial transcript tell us? It may not tell us, it may not answer the question, but what prompted the defense attorney to ask to voir dire? If the only reason a defense attorney would do that is because they have something that contradicts what she just said, and if it did contradict what she just said, it would be highly relevant, wouldn't it? In that hypothetical, yes, but they didn't move to impeach her with any kind of extrinsic evidence at trial. They simply moved on. The trial court told the defense to move on? Yes. Didn't let them do it? Yes, and they didn't, and just based on her answer, that she didn't blame the victim, and again, the relevance of that is minimal at best, and defense counsel had an adequate opportunity to raise other issues that could have made the jury doubt Ms. Tainwasher's credibility. They were able to elicit on cross-examination that at the time this incident occurred, that is, the murder of the victim in this case, Ms. Tainwasher was a heavy user of drugs and or alcohol, that she had, in fact, been an inpatient substance abuse treatment before, that she failed to tell the police about this murder hours after it happened, even though she called the police to report her car stolen. Defense counsel was also able to elicit the fact that Ms. Tainwasher refused to speak to defense counsel before trial, and that she was under investigation for serious charges by the United States at the time she testified. So, regardless of the limitation that the district court placed on that irrelevant testimony regarding the circumstances of her brother's death, separate and apart from this murder, there's no confrontation clause violation here because they were adequately, defense counsel was adequately able to appraise the jury of Ms. Tainwasher's potential biases and motivations for testifying. And even if that limitation did constitute a confrontation clause violation, it was harmless beyond a reasonable doubt because, again, the defense counsel was able to elicit other reasons as to why the jury could possibly doubt Ms. Tainwasher's credibility. What was, in the exchange with Tainwasher about the brother, what were they trying to refresh her recollection with? Because there's some suggestion they asked for a transcript that's not available. There was a report. What was counsel trying to do there? Do you know? I do not know. Was there any effort made to explain to the district court what the counsel was trying to do there? Because it's not fully apparent from the face of the transcript. Yeah. From the record, I'm unable to determine exactly what they thought they had. But, again, Ms. Tainwasher testified at trial that she did not blame the victim for her brother's death. She said she didn't recall that. And then there was maybe going to be some effort to put something in front of her. But what that is, it's not clear from this. Correct. Yeah, it's not clear from the record in this case. Defense counsel may be able to, or the opponent may be able to pick that up in rebuttal. Judge Bress is right. We're stuck with the transcript, as are you. And we can't speculate. And with the remaining time I have, I'd like to address the ineffective assistance of counsel claims that Mr. Stevens brings on appeal. So in addressing the court's earlier question as to whether this is the proper forum to address that issue, it is the United States' position that, yes, this is the proper forum because the record is adequately developed. About a month after the trial, a motion was filed for a new trial based on ineffective assistance of counsel. That issue was fully briefed and there was an evidentiary hearing, the findings of which Mr. Stevens does not challenge as clearly erroneous on appeal. And in this case, trial counsel's performance was neither deficient and it did not prejudice Mr. Stevens' defense in this case. So as to the withdrawal of the mistrial motion after conferring with Mr. Stevens, that decision was strategically reasonable. It does not fall below that objective standard of reasonableness or any performance. There was strategic reasons to withdraw that motion given some of the concessions defense counsel was able to obtain from three of the government's witnesses at trial. As the district court noted in its post-trial order denying the motion for a new trial, it noted counsel's cross-examination of Agent Barefoot was not professionally unreasonable and indeed was skillful. Counsel was able to control the questioning of Agent Barefoot, was able to get significant concessions from him, asserted, again, control over that questioning, was able to draw out reasons that the jury maybe could use to find his testimony less credible. This IAC claim, Beneficiary Assistance Counsel, is related to the Barefoot opinion testimony on guilt, right? Correct, in two different ways. The failure to immediately object even though an objection and briefing was had about 10 minutes later and then the withdrawal of the mistrial motion the following morning. But again, Mr. Stevens' trial counsel's performance in this case was not deficient and it didn't prejudice him and that's mostly because there is a presumption in this case that the jury followed that curative instruction, that they followed the law in not considering that improper opinion testimony at all in their deliberations. So because there's not a showing of deficient performance or of prejudice, there's no ineffective assistance of counsel claim. As a district court noted, Mr. Stevens' trial counsel was able to present all issues to the jury that they believed would create reasonable doubt. Defense counsel testified to that at the evidentiary hearing and that is what the district court found in this case. And with the time I have left, I would just like to ask... Don't have to use it all. I'll just wrap up. We ask that this court affirm the judgment of the district court in full. Mr. Stevens did receive a fair trial. His counsel was not constitutionally ineffective and the district court otherwise properly exercised discretion in the presentation of evidence. And the district court needs to have that discretion when it comes to evidence and how to administer that at trial because it is in the best position to make those determinations at the time. So, thank you. Thank you. Mr. Johnson? Thank you, Your Honor. There's... On page 4 and 5 of our brief, it's 3 ER 289 to 90. That's the colloquy or the question offer of proof with respect to the Tane Washer issue. And one of the frustrating things as appellate counsel is I'm stuck with the record that's made by the district court. What was the offer of proof? Well, it's not real clear what the offer of proof is. Give it to us. Between the lines is she had previously expressed that she blamed the victim for her brother's death. Okay. But it's not clearly in the record. I'm not going to make that up. Is your understanding that there was a document that... I think there was a police report where that was mentioned in the report. But there was no... It was not introduced in the record as part of the offer of proof,  So, that's where I'm at on that. But overall, you know, you're not entitled to a perfect trial. There's no such thing. But you've got to be fair. The judge was trying to do a fair job in this case. But a lot of his rulings seemed to tilt the scales of justice in favor of the government. And I just think the defendant in this case, in light of the lack of really clear-cut evidence tying him to the scene of the murder and whatnot, I don't believe he got a constitutionally fair trial to grant a new trial on the case. And that's my conclusion. And there's nothing further. Thank you.  Thank you. I want to thank both counsel for the helpful briefing and argument. This matter is submitted.
judges: HAWKINS, CLIFTON, BRESS